

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | I N D I C T M E N T |
| ) | |
| Plaintiff,  ) | **5:14CR096** |
| ) | |
| v.  ) | CASE NO._____ |
| ) | Title 21, Sections 841(a)(1), |
| ADOLPH HARPER, JR.,  ) | (b)(1)(C), (b)(1)(E), and (b)(2), |
| ADRIA HARPER,  ) | and 846, United States Code; |
| PATRICIA LAUGHMAN, and  ) | Title 18, Sections 1347 and 2, |
| TEQUILLA BERRY,  ) | United States Code |
| ) | |
| Defendants.  ) | |

## COUNT 1

The Grand Jury charges:

At all times material and relevant to this Indictment:

### INTRODUCTION

### I.    Overview

1.      From on or about September 1, 2009, and continuing through on or about May 18,

2012, the defendants, ADOLPH HARPER, JR., ADRIA HARPER, PATRICIA LAUGHMAN,

TEQUILLA BERRY, and others (collectively, the "HARPER DRUG TRAFFICKING

ORGANIZATION" or "HARPER DTO") agreed to illegally distribute hundreds of thousands of

doses of prescription painkillers to customers located in the Northern District of Ohio and

elsewhere.  They did so using ADOLPH HARPER, JR.'s "medical" offices located in Akron, Ohio, by issuing drug orders purporting to be "prescriptions" for Schedule II controlled substances, primarily oxycodone, oxymorphone, methadone, and amphetamines, Schedule III controlled substances, primarily buprenorphine and hydrocodone, and Schedule IV controlled substances, primarily alprazolam, to customers that they characterized as "patients."

## II.  The Controlled Substances Act

2.  The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States.  With limited exceptions, the CSA made it "unlawful for any person knowingly or intentionally" to "distribute or dispense . . . a controlled substance" or conspire to do so.

3.  The term "controlled substance" meant a drug or other substance included in Schedules I, II, III, IV, and V of the CSA.  The term "dispense" meant to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner; it included the prescribing and administering of a controlled substance.  The term "distribute" meant to deliver (other than by administrating or dispensing) a controlled substance.  The term "practitioner" meant a physician, medical doctor, dentist, or other person licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he or she practiced, to distribute a or dispense a controlled substance in the course of professional practice.

4.  Defendant ADOLPH HARPER, JR., was a medical doctor licensed by the State of Ohio Medical Board and considered a "practitioner" within the meaning of the CSA.

5.  Individual practitioners who wanted to distribute or dispense controlled substances in the course of professional practice were required to register with the Attorney General of the United States ("Attorney General") before they were legally authorized to do so.

Such individual practitioners were assigned a registration number by the Drug Enforcement Administration ("DEA").

6.      ADOLPH HARPER, JR., was registered with the Attorney General and DEA under registration number AH9159004.

7.      Practitioners registered with the Attorney General were authorized under the CSA to write prescriptions for, or to otherwise dispense Schedule II, III, IV, and V controlled substances, so long as they complied with the requirements of their registrations. 21 U.S.C. §§ 822(b). The CSA prohibited any person from knowingly and intentionally using a DEA registration number issued to another person in the course of distributing or dispensing a controlled substance.

8.      For medical doctors, compliance with the terms of their registrations meant that they could issue a prescription for a controlled substance to a patient only if the prescription was "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice." 21 C.F.R. §1306.04(a). A doctor violated the CSA and Code of Federal Regulations if he issued a prescription for a controlled substance outside the usual course of professional medical practice and not for a legitimate medical purpose. Such knowing and intentional violations subjected the doctor to criminal liability under Section 841(a) of Title 21, Untied States Code. 21 C.F.R. § 1306.04(a).

9.      The CSA's "scheduling" of controlled substances was based on their potential for abuse, among other considerations. There are five schedules of controlled substances: Schedules I, II, III, IV, and V. Drugs that had a high potential for abuse and could lead to severe psychological or physical dependence were classified as Schedule II controlled substances. Drugs that had a potential for abuse and could lead to moderate or low physical dependence or

3

high psychological dependence were classified as Schedule III controlled substances. Drugs that had a low potential for abuse and could lead to limited physical or psychological dependence were classified as Schedule IV controlled substances. 21 U.S.C. § 812.

10. Pursuant to the CSA and its implementing regulations, oxycodone was classified as a Schedule II narcotic controlled substance based on its high potential for abuse and potential for severe psychological and physical dependence. Oxycodone was sold under a variety of brand names, including Oxycontin, Percocet, and Endocet, as well as generic forms. Oxycodone was one of the strongest prescription painkilling substances approved for use in the United States, and it was very addictive. When abused, oxycodone could be taken orally (in pill form), chewed, or crushed and snorted. Oxycodone caused euphoria and a high that persons with a dependency and no actual medical necessity would seek.

11. Oxycontin, Percocet, and Roxicet were name brand Schedule II controlled substances in which oxycodone was the active ingredient. Percocet and Roxicet combined oxycodone and acetaminophen, also abbreviated "APAP." When Oxycontin, Percocet, and Roxicet tablets were legally prescribed for a legitimate medical purpose, they were intended to be taken orally for the management of moderately severe to severe pain under the careful supervision of a treating physician. Because they contain oxycodone, Oxycontin, Percocet, and Roxicet tablets could be highly addictive, and the withdrawal symptoms of Oxycontin, Percocet, and Roxicet addiction could be severe.

12. Pursuant to the CSA and its implementing regulations, oxymorphone was classified as a Schedule II narcotic controlled substance based on its high potential for abuse and potential for severe psychological and physical dependence. Oxymorphone was sold under a variety of brand names, including Opana and Opana ER, as well as generic forms.

Oxymorphone was one of the strongest prescription painkilling substances approved for use in the United States, and it was very addictive. When abused, oxymorphone could be taken orally (in pill form), chewed, or crushed and snorted. Oxymorphone caused euphoria and a high that persons with a dependency and no actual medical necessity would seek.

13.    Opana was a namebrand Schedule II controlled substance in which oxymorphone was the active ingredient. Opana was sold in immediate release ("IR") and extended-release ("ER") form. When Opana tablets were legally prescribed for a legitimate medical purpose, they were intended to be taken orally for the management of moderately severe to severe pain under the careful supervision of a treating physician. Because they contain oxymorphone, Opana tablets could be highly addictive, and the withdrawal symptoms of Opana addiction could be severe.

14.    Pursuant to the CSA and its implementing regulations, methadone – a pharmaceutical opioid – was classified as a Schedule II controlled substance, based on its potential for abuse and physical and psychological dependence. Methadone was a derivative of opium. Methadone was sold generically or under a variety of brand names, including Methadose and Dolophine, and it came in a variety of strengths. When Methadone was legally prescribed for a legitimate medical purpose, it was primarily used as a pain reliever and, separately, as part of drug-addiction detoxification and maintenance protocol. Methadone was a narcotic pain reliever that had the potential for being abused. The major hazards of abusing methadone were respiratory depression and systemic hypotension, and when abused could result in respiratory arrest, shock, cardiac arrest, and death.

15.    Pursuant to the CSA and its implementing regulations, amphetamine was a stimulant classified as a Schedule II controlled substance based on its high potential for abuse

5

and potential for severe psychological and physical dependence. "Amphetamine" included the drug itself, as well as "its salts, optical isomers, and salts of its optical isomers" and was available as both generic and brand name substances such as Adderall, ADDERALL XR, Dextroamphetamine, Dexedrine, Amphetamine, Biphetamine, Obertrol. Amphetamines and other stimulants could be abused in several ways, including swallowing, if in a pill form; snorted in powder; injected with a needle or syringe; or heated into crystal form and smoked. Stimulant overdoses could lead to heart problems, strokes, and convulsions and have resulted in death when not treated immediately. Amphetamine abuse could cause sudden death and serious cardiovascular adverse reactions.

16.     Pursuant to the CSA and its implementing regulations, buprenorphine was classified as a Schedule III controlled substance, based on its potential for abuse and physical and psychological dependence. Buprenorphine was a derivative of opium. Buprenorphine was sold generically or under a variety of brand names, including Suboxone, Buprenex, Subutex, Dutrans, and Zubsolv, and it came in a variety of strengths. When buprenorphine was legally prescribed for a legitimate medical purpose, it was typically used to treat moderately severe pain and, separately, to treat opioid addiction under the careful supervision of a treating physician. Buprenorphine could successfully treat pain and addiction, but it was addictive and the withdrawal symptoms of buprenorphine addiction could be severe. When abused, buprenorphine could be taken orally (sublingually), nasally, and intravenously. Buprenorphine caused euphoria and a high that persons with a dependency and no actual medical need for the drug would seek.

17.     Suboxone was a namebrand Schedule III controlled substance in which buprenorphine was the active ingredient. Suboxone was sold in sublingual films and tablets. When Suboxone films and tablets were legally prescribed for a legitimate medical purpose, they

6

were intended to treat opioid addiction under the careful supervision of a treating physician.
Suboxone could successfully treat opioid addiction, but it also gained popularity among drug
abusers as a heroin substitute.  Suboxone abusers often used Suboxone and Subutex as a bridge
to avoid withdrawal symptoms when other illegal drugs are not readily available.

18.     Pursuant to the CSA and its implementing regulations, hydrocodone – an
addictive narcotic prescription painkiller – was classified as a Schedule III controlled substance,
based on its potential for abuse and physical and psychological dependence.  Hydrocodone was a
derivative of opium.  Hydrocodone was sold generically or under a variety of brand names,
including Vicodin, Vicoprofen, Lortab, and Norco, and it came in a variety of strengths.  When
hydrocodone was legally prescribed for a legitimate medical purpose, it was typically used to
combat acute, moderate to severe pain under the careful supervision of a treating physician.
Hydrocodone successfully diminished pain, but it was addictive and the withdrawal symptoms of
hydrocodone addiction could be severe.  When abused, hydrocodone could be taken orally (in
pill form), chewed, or crushed and snorted.  Hydrocodone caused euphoria and a high that
persons with a dependency and no actual medical need for the drug would seek.

19.     Alprazolam, an anti-anxiety medication, was classified under the CSA as a
Schedule IV drug based on its relatively lower potential for physical and psychological
dependence, as compared to Schedule III drugs.  Alprazolam was sold generically or under the
brand name Xanax.  Nonetheless, alprazolam could be habit-forming, and the withdrawal
symptoms of alprazolam addiction could be severe.  When legally prescribed for a legitimate
medical purpose, alprazolam was typically used in the short-term to treat moderate cases of
anxiety, panic attacks, and panic disorder.  Alprazolam altered the mood of the person who
ingested it, providing a sense of calm and pleasure, and depressed the nervous system in a way

similar to alcohol. As a result, it was sometimes abused by persons who had no legitimate medical need to take it. Alprazolam was typically abused in oral pill form, but it was also sometimes injected, and it was often abused in conjunction with alcohol.

20.     Zolpidem (zolpidem tartrate), a non-benzodiazepine hypnotic medication, was classified under the CSA as a Schedule IV drug based on its relatively lower potential for physical and psychological dependence as compared to Schedule III drugs. Zolpidem was sold under the brand names Ambien, Ambien CR, and Zolpimist. Zolpidem could be habit forming. When legally prescribed for a legitimate medical purpose, Zolpidem Tartrate was typically used for the short-term treatment of insomnia characterized by difficulties with sleep initiation. Zolpidem, like other sedative-hypnotic drugs, had central nervous system ("CNS") depressant effects similar to alcohol. As such, it was sometimes abused by persons who had no legitimate medical need to take it. Zolpidem was typically abused in oral pill form and was often abused in conjunction with opiates and other CNS depressants.

**THE OFFENSE**

21.     Beginning at least on or about September 1, 2009, and continuing through on or about May 18, 2012, the exact dates to the Grand Jury unknown, in the Northern District of Ohio, Eastern Division, ADOLPH HARPER, JR., ADRIA HARPER, PATRICIA LAUGHMAN, and TEQUILLA BERRY, the defendants herein, and others known and unknown to the Grand Jury, did unlawfully, knowingly and intentionally combine, conspire, confederate, and agree together and with each other, and with diverse others known and unknown to the Grand Jury, to knowingly and intentionally distribute and dispense oxycodone, oxymorphone, methadone, and amphetamines, Schedule II controlled substances, buprenorphine and hydrocodone, Schedule III controlled substances, and alprazolam and zolpidem, Schedule IV

8

controlled substances, outside the usual course of professional practice and not for a legitimate

medical purpose, contrary to and in violation of Title 21, United States Code, Sections 841(a)(1),

(b)(1)(C), (b)(1)(E), and (b)(2) and 846.

## Manner and Means

22.　　It was part of the conspiracy that ADOLPH HARPER, JR., used his DEA

registration number to prescribe quantities of oxycodone, oxymorphone, methadone,

amphetamines, buprenorphine, hydrocodone, alprazolam, and zolpidem to customers, who he

described as "patients," outside the usual course of professional practice and not for a legitimate

medical purpose.

23.　　It was further part of the conspiracy that ADOLPH HARPER, JR. operated

"medical" offices located in Akron, Ohio.  ADRIA HARPER, PATRICIA LAUGHMAN and

TEQUILLA BERRY were employed in those offices.  ADRIA HARPER was responsible for

scheduling customers' appointments, checking in customers, and collecting customers'

payments.  LAUGHMAN was the front-desk secretary with similar duties to ADRIA HARPER.

BERRY assisted ADOLPH HARPER, JR., with "patients" as part of his daily "medical

practice."

24.　　It was further part of the conspiracy that ADOLPH HARPER, JR. pre-signed

blank prescription forms, and ADRIA HARPER, LAUGHMAN, and BERRY completed

prescription information for customers and distributed "prescriptions" to the customers

anticipating that the customers would fill the "prescriptions" at a pharmacy and receive

controlled substances.

25. It was further part of the conspiracy that ADOLPH HARPER, JR. distributed "prescriptions" to customers who he knew had tested positive for illegal controlled substances during the customer's appointment.

26. It was further part of the conspiracy that ADOLPH HARPER, JR. distributed "prescriptions" for controlled substances to customers after he learned that the customer had overdosed on controlled substances.

27. It was further part of the conspiracy that ADOLPH HARPER, JR. continued to distribute "prescriptions" for controlled substances after he learned that some of his customers had died from overdose-related deaths.

28. It was further part of the conspiracy that ADRIA HARPER, LAUGHMAN, and BERRY distributed "prescriptions" to customers and themselves using ADOLPH HARPER, JR.'s DEA registration number and pre-signed blank prescription forms when ADOLPH HARPER, JR. was not in the office and had not seen the customer.

29. It was further part of the conspiracy that ADOLPH HARPER, JR., distributed "prescriptions" to customers after conducting a cursory examination of the customer and often without examining the customer.

30. It was further part of the conspiracy that ADOLPH HARPER, JR. distributed combinations of "prescriptions" for controlled substances that were dangerous to consume in combination, outside the usual course of professional practice, and not for any legitimate medical purpose.

31. It was further part of the conspiracy that the HARPER DTO posted in ADOLPH HARPER, JR.'s "medical" office a list of pharmacies that were likely to fill ADOLPH HARPER, JR.'s customers' "prescriptions."

32.     It was further part of the conspiracy that ADRIA HARPER and TEQUILLA BERRY completed patient treatment notes for some of the HARPER DTO's customers before the customers arrived at the office for an appointment.

33.     It was further part of the conspiracy that members of the HARPER DTO wrote the same diagnosis for several of the HARPER DTO's customers, regardless of the customer's individualized medical needs.

34.     It was further part of the conspiracy that ADRIA HARPER, PATRICIA LAUGHMAN, and TEQUILLA BERRY wrote "prescriptions" for controlled substances in their names and the names of their friends and family members.

## II.     Acts in Furtherance of the Conspiracy

35.     In furtherance of the conspiracy and to effect the objectives thereof, the defendants and others performed the following acts in the Northern District of Ohio, including but not limited to the following:

a.     On or about the dates listed below, from his office in Akron, Ohio, ADOLPH HARPER, JR. issued "prescriptions" for the following controlled substances on the following dates to J.C., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---------|-----------------|----------------|----------|-----------|----------------|-----|
| a-1 | 6/29/2011 | 6/29/2011 | J.C. | Xanax | 2 mg | 90 |
| a-2 | 6/29/2011 | 6/29/2011 | J.C. | Oxycodone | 30 mg | 90 |
| a-3 | 6/1/2011 | 6/1/2011 | J.C. | Xanax | 2 mg | 60 |
| a-4 | 6/1/2011 | 6/1/2011 | J.C. | Opana | 40 mg | 90 |
| a-5 | 6/1/2011 | 6/1/2011 | J.C. | Oxycodone | 30 mg | 90 |
| a-6 | 4/1/2011 | 4/1/2011 | J.C. | Xanax | 2 mg | 90 |
| a-7 | 4/1/2011 | 4/1/2011 | J.C. | Opana ER | 40 mg | 90 |
| a-8 | 4/1/2011 | 4/1/2011 | J.C. | Oxycodone | 30 mg | 90 |
| a-9 | 3/4/2011 | 3/4/2011 | J.C. | Xanax | 2 mg | 90 |
| a-10 | 3/4/2011 | 3/4/2011 | J.C. | Opana ER | 40 mg | 90 |
| a-11 | 3/4/2011 | 3/4/2011 | J.C. | Oxycodone | 30 mg | 90 |
| a-12 | 1/7/2011 | 1/7/2011 | J.C. | Xanax | 2 mg | 90 |

| a-13 | 1/7/2011 | 1/7/2011 | J.C. | Opana ER | 40 mg | 90 |
| a-14 | 1/7/2011 | 1/7/2011 | J.C. | Oxycodone | 30 mg | 120 |
| a-15 | 12/10/2010 | 12/10/2010 | J.C. | Xanax | 2 mg | 90 |
| a-16 | 12/10/2010 | 12/10/2010 | J.C. | Opana ER | 40 mg | 60 |
| a-17 | 12/10/2010 | 12/10/2010 | J.C. | Oxycodone | 30 mg | 120 |

b.　　On or about the dates listed below, from his office in Akron, Ohio, ADOLPH

HARPER, JR. issued "prescriptions" for the following controlled substances on the following

dates to K.C., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---------|-----------------|----------------|----------|-----------|----------------|-----|
| b-1 | 1/12/2012 | 1/12/2012 | K.C. | Xanax | 2 mg | 90 |
| b-2 | 1/12/2012 | 1/12/2012 | K.C. | Oxycodone | 15 mg | 120 |
| b-3 | 1/12/2012 | 1/12/2012 | K.C. | Oxycodone | 30 mg | 120 |
| b-4 | 12/15/2011 | 12/15/2011 | K.C. | Xanax | 2 mg | 90 |
| b-5 | 12/15/2011 | 12/15/2011 | K.C. | Oxycodone | 15 mg | 90 |
| b-6 | 12/15/2011 | 12/15/2011 | K.C. | Oxycodone | 30 mg | 120 |
| b-7 | 11/17/2011 | 11/17/2011 | K.C. | Xanax | 2 mg | 90 |
| b-8 | 11/17/2011 | 11/17/2011 | K.C. | Oxycodone | 15 mg | 120 |
| b-9 | 11/17/2011 | 11/17/2011 | K.C. | Oxycodone | 30 mg | 120 |
| b-10 | 10/20/2011 | 10/20/2011 | K.C. | Xanax | 2 mg | 90 |
| b-11 | 10/20/2011 | 10/20/2011 | K.C. | Oxycodone | 15 mg | 120 |
| b-12 | 10/20/2011 | 10/20/2011 | K.C. | Oxycodone | 30 mg | 120 |
| b-13 | 9/22/2011 | 9/22/2011 | K.C. | Xanax | 2 mg | 90 |
| b-14 | 9/22/2011 | 9/22/2011 | K.C. | Oxycodone | 15 mg | 120 |
| b-15 | 9/22/2011 | 9/22/2011 | K.C. | Oxycodone | 30 mg | 120 |
| b-16 | 8/25/2011 | 8/25/2011 | K.C. | Xanax | 2 mg | 90 |
| b-17 | 8/25/2011 | 8/25/2011 | K.C. | Oxycodone | 15 mg | 120 |
| b-18 | 8/25/2011 | 8/25/2011 | K.C. | Oxycodone | 30 mg | 120 |

c.　　On or about the dates listed below, from his office in Akron, Ohio, ADOLPH

HARPER, JR. issued "prescriptions" for the following controlled substances on the following

dates to Y.Z., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---------|-----------------|----------------|----------|-----------|----------------|-----|
| c-1 | 7/5/2011 | 7/5/2011 | Y.Z. | Xanax | 2 mg | 90 |
| c-2 | 7/5/2011 | 7/5/2011 | Y.Z. | Methadone | 10 mg | 180 |
| c-3 | 7/5/2011 | 7/5/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| c-4 | 4/26/2011 | 4/29/2011 | Y.Z. | Xanax | 2 mg | 90 |

| c-5 | 4/26/2011 | 4/29/2011 | Y.Z. | Methadone | 10 mg | 180 |
| c-6 | 4/26/2011 | 4/29/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| c-7 | 4/1/2011 | 4/1/2011 | Y.Z. | Xanax | 2 mg | 90 |
| c-8 | 4/1/2011 | 4/1/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| c-9 | 3/4/2011 | 3/4/2011 | Y.Z. | Xanax | 2 mg | 90 |
| c-10 | 3/4/2011 | 3/4/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| c-11 | 1/12/2011 | 1/12/2011 | Y.Z. | Xanax | 2 mg | 60 |
| c-12 | 1/12/2011 | 1/12/2011 | Y.Z. | Methadone | 10 mg | 120 |
| c-13 | 1/12/2011 | 1/12/2011 | Y.Z. | Oxycodone | 15 mg | 90 |

    d.      On or about the dates listed below, from his office in Akron, Ohio, ADOLPH

HARPER, JR. issued "prescriptions" for the following controlled substances on the following

dates to M.F., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| d-1 | 4/1/2011 | 4/6/2011 | M.F. | Adderall | 30 mg | 30 |
| d-2 | 4/1/2011 | 4/6/2011 | M.F. | Percocet | 325/10mg | 120 |
| d-3 | 3/4/2011 | 3/4/2011 | M.F. | Xanax | 2 mg | 60 |
| d-4 | 3/4/2011 | 3/4/2011 | M.F. | Adderall | 30 mg | 30 |
| d-5 | 3/4/2011 | 3/4/2011 | M.F. | Percocet | 325/10mg | 120 |
| d-6 | 2/2/2011 | 2/3/2011 | M.F. | Xanax | 2 mg | 60 |
| d-7 | 2/2/2011 | 2/2/2011 | M.F. | Adderall | 30 mg | 30 |
| d-8 | 2/2/2011 | 2/3/2011 | M.F. | Percocet | 325/10mg | 120 |
| d-9 | 1/5/2011 | 1/5/2011 | M.F. | Xanax | 2 mg | 60 |
| d-10 | 1/5/2011 | 1/5/2011 | M.F. | Adderall | 30 mg | 30 |
| d-11 | 1/5/2011 | 1/5/2011 | M.F. | Oxycontin | 40 mg | 60 |
| d-12 | 11/4/2010 | 11/14/2010 | M.F. | Adderall | 30 mg | 30 |
| d-13 | 11/4/2010 | 11/12/2010 | M.F. | Xanax | 2 mg | 90 |
| d-14 | 11/4/2010 | 11/4/2010 | M.F. | Percocet | 325/10mg | 120 |

    e.      On or about the dates listed below, from his office in Akron, Ohio, ADOLPH

HARPER, JR. issued "prescriptions" for the following controlled substances on the following

dates to T.L., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| e-1 | 10/28/2011 | 10/29/2011 | T.L. | Percocet | 325/10 mg | 120 |
| e-2 | 10/28/2011 | 10/28/2011 | T.L. | Xanax | 2 mg | 60 |
| e-3 | 10/28/2011 | 10/28/2011 | T.L. | Opana ER | 40 mg | 90 |
| e-4 | 9/30/2011 | 9/30/2011 | T.L. | Xanax | 2 mg | 60 |

| e-5 | 9/30/2011 | 9/30/2011 | T.L. | Percocet | 325/10 mg | 120 |
| e-6 | 9/30/2011 | 9/30/2011 | T.L. | Opana ER | 40 mg | 90 |
| e-7 | 9/2/2011 | 9/2/2011 | T.L. | Xanax | 2 mg | 60 |
| e-8 | 9/2/2011 | 9/2/2011 | T.L. | Percocet | 325/10 mg | 120 |
| e-9 | 9/2/2011 | 9/2/2011 | T.L. | Opana ER | 40 mg | 90 |
| e-10 | 8/5/2011 | 8/6/2011 | T.L. | Opana ER | 40 mg | 90 |
| e-11 | 8/5/2011 | 8/6/2011 | T.L. | Xanax | 2 mg | 60 |
| e-12 | 8/5/2011 | 8/5/2011 | T.L. | Percocet | 325/10 mg | 120 |
| e-13 | 7/8/2011 | 7/11/2011 | T.L. | Percocet | 325/10mg | 120 |
| e-14 | 7/8/2011 | 7/8/2011 | T.L. | Xanax | 2 mg | 60 |
| e-15 | 7/8/2011 | 7/8/2011 | T.L. | Opana ER | 40 mg | 90 |

f.     On or about the dates listed below, from his office in Akron, Ohio, ADOLPH

HARPER, JR. issued "prescriptions" for the following controlled substances on the following

dates to R.W., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| f-1 | 2/3/2012 | 2/3/2012 | R.W. | Oxycodone | 15 mg | 120 |
| f-2 | 2/3/2012 | 2/3/2012 | R.W. | Oxycodone | 30 mg | 90 |
| f-3 | 2/3/2012 | 2/3/2012 | R.W. | Xanax | 2 mg | 60 |
| f-4 | 1/3/2012 | 1/3/2012 | R.W. | Oxycodone | 30 mg | 90 |
| f-5 | 1/3/2012 | 1/3/2012 | R.W. | Oxycodone | 15 mg | 120 |
| f-6 | 1/3/2012 | 1/3/2012 | R.W. | Xanax | 2 mg | 60 |
| f-7 | 12/5/2011 | 12/5/2011 | R.W. | Oxycodone | 30 mg | 90 |
| f-8 | 12/5/2011 | 12/5/2011 | R.W. | Xanax | 2 mg | 60 |
| f-9 | 11/4/2011 | 11/5/2011 | R.W. | Oxycodone | 15 mg | 120 |
| f-10 | 11/4/2011 | 11/5/2011 | R.W. | Xanax | 2 mg | 60 |
| f-11 | 10/6/2011 | 10/6/2011 | R.W. | Oxycodone | 30 mg | 90 |
| f-12 | 10/6/2011 | 10/6/2011 | R.W. | Xanax | 2 mg | 60 |
| f-13 | 10/6/2011 | 10/6/2011 | R.W. | Oxycodone | 15 mg | 120 |
| f-14 | 9/9/2011 | 9/9/2011 | R.W. | Xanax | 2 mg | 60 |
| f-15 | 9/8/2011 | 9/8/2011 | R.W. | Oxycodone | 30 mg | 90 |
| f-16 | 9/8/2011 | 9/8/2011 | R.W. | Percocet | 325/10mg | 120 |

g.    On or about the dates listed below, from his office in Akron, Ohio, ADOLPH
HARPER, JR. issued "prescriptions" for the following controlled substances on the following
dates to P.L., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| g-1 | 8/3/2011 | 8/3/2011 | P.L. | Percocet | 325/10mg | 120 |
| g-2 | 8/3/2011 | 8/3/2011 | P.L. | Oxycodone | 30 mg | 120 |
| g-3 | 8/3/2011 | 8/3/2011 | P.L. | Xanax | 2 mg | 60 |
| g-4 | 7/6/2011 | 7/7/2011 | P.L. | Oxycodone | 30 mg | 120 |
| g-5 | 7/6/2011 | 7/7/2011 | P.L. | Xanax | 2 mg | 60 |
| g-6 | 7/6/2011 | 7/7/2011 | P.L. | Percocet | 325/10mg | 120 |
| g-7 | 6/8/2011 | 6/8/2011 | P.L. | Percocet | 325/10 mg | 120 |
| g-8 | 6/8/2011 | 6/8/2011 | P.L. | Xanax | 2 mg | 60 |
| g-9 | 6/8/2011 | 6/8/2011 | P.L. | Oxycodone | 30 mg | 120 |
| g-10 | 5/11/2011 | 5/11/2011 | P.L. | Percocet | 325/10mg | 120 |
| g-11 | 5/11/2011 | 5/11/2011 | P.L. | Xanax | 2 mg | 60 |
| g-12 | 5/11/2011 | 5/11/2011 | P.L. | Oxycodone | 30 mg | 120 |
| g-13 | 4/13/2011 | 4/13/2011 | P.L. | Percocet | 325/10mg | 120 |
| g-14 | 4/13/2011 | 4/13/2011 | P.L. | Oxycodone | 30 mg | 120 |
| g-15 | 4/13/2011 | 4/13/2011 | P.L. | Xanax | 2 mg | 60 |
| g-16 | 3/16/2011 | 3/16/2011 | P.L. | Percocet | 325/10mg | 120 |
| g-17 | 3/16/2011 | 3/16/2011 | P.L. | Xanax | 2 mg | 60 |
| g-18 | 3/16/2011 | 3/16/2011 | P.L. | Oxycodone | 30 mg | 120 |

h.    On or about the dates listed below, from his office in Akron, Ohio, ADOLPH
HARPER, JR. issued "prescriptions" for the following controlled substances on the following
dates to Je.C., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| h-1 | 6/23/2011 | 6/23/2011 | Je.C. | Opana ER | 40 mg | 90 |
| h-2 | 6/23/2011 | 6/23/2011 | Je.C. | Xanax | 2 mg | 60 |
| h-3 | 5/4/2011 | 5/4/2011 | Je.C. | Opana ER | 20 mg | 120 |
| h-4 | 5/3/2011 | 5/3/2011 | Je.C. | Xanax | 2 mg | 60 |
| h-5 | 5/3/2011 | 5/3/2011 | Je.C. | Opana ER | 40 mg | 60 |
| h-6 | 4/5/2011 | 4/5/2011 | Je.C. | Opana ER | 40 mg | 120 |
| h-7 | 4/5/2011 | 4/5/2011 | Je.C. | Xanax | 2 mg | 60 |
| h-8 | 3/8/2011 | 3/8/2011 | Je.C. | Opana ER | 40 mg | 120 |
| h-9 | 3/8/2011 | 3/8/2011 | Je.C. | Xanax | 2 mg | 60 |
| h-10 | 2/7/2011 | 2/7/2011 | Je.C. | Opana ER | 40 mg | 120 |

| h-11 | 2/7/2011 | 2/7/2011 | Je.C. | Xanax | 2 mg | 60 |

i.    On or about the dates listed below, from his office in Akron, Ohio, ADOLPH

HARPER, JR. issued "prescriptions" for the following controlled substances on the following

dates to J.O., a HARPER DTO customer not charged herein:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---------|-----------------|----------------|----------|-----------|----------------|-----|
| i-1 | 10/25/2011 | 10/25/2011 | J.O. | Xanax | 2 mg | 60 |
| i-2 | 10/25/2011 | 10/25/2011 | J.O. | Oxycodone | 10 mg | 60 |
| i-3 | 10/25/2011 | 10/25/2011 | J.O. | Opana ER | 40 mg | 60 |
| i-4 | 9/22/2011 | 9/22/2011 | J.O. | Xanax | 2 mg | 60 |
| i-5 | 9/22/2011 | 9/22/2011 | J.O. | Opana ER | 40 mg | 60 |
| i-6 | 9/22/2011 | 9/22/2011 | J.O. | Oxy IR | 5 mg | 60 |
| i-7 | 8/25/2011 | 8/25/2011 | J.O. | Opana ER | 40 mg | 60 |
| i-8 | 8/25/2011 | 8/25/2011 | J.O. | Xanax | 2 mg | 60 |
| i-9 | 7/28/2011 | 7/28/2011 | J.O. | Opana ER | 40 mg | 60 |
| i-10 | 7/28/2011 | 7/28/2011 | J.O. | Xanax | 2 mg | 60 |
| i-11 | 7/28/2011 | 7/28/2011 | J.O. | Ambien | 10 mg | 20 |
| i-12 | 6/30/2011 | 6/30/2011 | J.O. | Ambien | 10 mg | 20 |
| i-13 | 6/30/2011 | 6/30/2011 | J.O. | Xanax | 2 mg | 60 |
| i-14 | 6/30/2011 | 6/30/2011 | J.O. | Opana ER | 40 mg | 60 |
| i-15 | 6/2/2011 | 6/2/2011 | J.O. | Xanax | 2 mg | 60 |
| i-16 | 6/2/2011 | 6/2/2011 | J.O. | Opana ER | 20 mg | 60 |

j.    On or about the dates listed below, from ADOLPH HARPER, JR.'s office in

Akron, Ohio, ADRIA HARPER distributed to herself "prescriptions" for the following

controlled substances on the following dates:

| Act No. | Date Rx Written | Date Rx Filled | Name | Substance | Strength mg/mg | Qty |
|---------|-----------------|----------------|------|-----------|----------------|-----|
| j-1 | 12/17/2010 | 12/17/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-2 | 12/16/2010 | 12/16/2010 | Adria Harper | Percocet | 10/325 mg | 150 |
| j-3 | 11/18/2010 | 11/18/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-4 | 11/4/2010 | 11/4/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-5 | 10/21/2010 | 10/21/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-6 | 9/28/2010 | 9/28/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-7 | 9/23/2010 | 9/23/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-8 | 8/31/2010 | 8/31/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-9 | 8/26/2010 | 8/26/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-10 | 8/3/2010 | 8/3/2010 | Adria Harper | Percocet | 10/325 mg | 120 |

| j-11 | 7/29/2010 | 7/29/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-12 | 7/6/2010 | 7/6/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-13 | 7/1/2010 | 7/1/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-14 | 6/7/2010 | 6/7/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-15 | 6/3/2010 | 6/3/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-16 | 5/6/2010 | 5/6/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-17 | 4/12/2010 | 4/13/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-18 | 4/8/2010 | 4/8/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-19 | 3/25/2010 | 3/25/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-20 | 3/11/2010 | 3/11/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-21 | 2/10/2010 | 2/11/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-22 | 2/2/2010 | 2/2/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-23 | 1/4/2010 | 1/4/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| j-24 | 12/7/2009 | 12/7/2009 | Adria Harper | Percocet | 10/325 mg | 120 |

k.      On or about the dates listed below, from ADOLPH HARPER, JR.'s office in

Akron, Ohio, PATRICIA LAUGHMAN distributed "prescriptions" to herself for the following

controlled substances on the following dates:

| Act No. | Date Rx Written | Date Rx Filled | Name | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| k-1 | 9/27/2010 | 9/27/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-2 | 8/19/2010 | 8/19/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-3 | 7/30/2010 | 7/31/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-4 | BLANK | 7/15/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-5 | 6/28/2010 | 6/28/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-6 | 6/14/2010 | 6/15/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-7 | 6/7/2010 | 6/9/2010 | Patricia Laughman | Oxycodone | 15 mg | 120 |
| k-8 | 5/13/2010 | 5/14/2010 | Patricia Laughman | Roxicet | 15 mg | 120 |
| k-9 | 4/20/2010 | 4/22/2010 | Patricia Laughman | Roxicet | 15 mg | 120 |
| k-10 | 4/12/2010 | 4/22/2010 | Patricia Laughman | Xanax | 2 mg | 120 |
| k-11 | 4/9/2010 | 4/10/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-12 | 3/22/2010 | 3/22/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-13 | 2/26/2010 | 2/26/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-14 | 2/26/2010 | 2/26/2010 | Patricia Laughman | Xanax | 2 mg | 120 |
| k-15 | 2/4/2010 | 2/8/2010 | Patricia Laughman | Xanax | 2 mg | 120 |
| k-16 | 2/4/2010 | 2/4/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| k-17 | 1/25/2010 | 1/25/2010 | Patricia Laughman | Percocet | 10/325 mg | 60 |

1.      On or about the dates listed below, from ADOLPH HARPER, JR.'s office in

Akron, Ohio, TEQUILLA BERRY wrote "prescriptions" in the name of E.P., not charged

herein, for the following controlled substances on the following dates:

| Act No. | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---------|-----------------|----------------|----------|-----------|----------------|-----|
| 1-1 | 2/1/2011 | 2/3/2011 | E.P. | Oxycodone | 30 mg | 120 |
| 1-2 | 11/5/2010 | 11/5/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 1-3 | 10/22/2010 | 10/26/2010 | E.P. | Oxy IR | 30 mg | 120 |
| 1-4 | 10/1/2010 | 10/4/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 1-5 | 7/30/2010 | 7/31/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 1-6 | 7/2/2010 | 7/2/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 1-7 | 6/22/2010 | 6/22/2010 | E.P. | Xanax | 2 mg | 90 |
| 1-8 | 5/28/2010 | 6/1/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 1-9 | 5/21/2010 | 5/21/2010 | E.P. | Xanax | 2 mg | 90 |

All in violation of Title 21, Sections 841(a)(1), (b)(1)(C), (b)(1)(E), and (b)(2), and 846

United States Code.

## COUNTS 2-12

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADOLPH HARPER, JR., the defendant, did knowingly and intentionally distribute and dispense

oxycodone and oxymorphone, Schedule II controlled substances, by issuing "prescriptions"

outside the usual course of professional practice and not for a legitimate medical purpose, as

indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|-------|-----------------|----------------|----------|-----------|----------------|-----|
| 2 | 6/29/2011 | 6/29/2011 | J.C. | Oxycodone | 30 mg | 90 |
| 3 | 6/1/2011 | 6/1/2011 | J.C. | Opana | 40 mg | 90 |
| 4 | 6/1/2011 | 6/1/2011 | J.C. | Oxycodone | 30 mg | 90 |
| 5 | 4/1/2011 | 4/1/2011 | J.C. | Opana ER | 40 mg | 90 |
| 6 | 4/1/2011 | 4/1/2011 | J.C. | Oxycodone | 30 mg | 90 |
| 7 | 3/4/2011 | 3/4/2011 | J.C. | Opana ER | 40 mg | 90 |
| 8 | 3/4/2011 | 3/4/2011 | J.C. | Oxycodone | 30 mg | 90 |
| 9 | 1/7/2011 | 1/7/2011 | J.C. | Opana ER | 40 mg | 90 |

| 10 | 1/7/2011 | 1/7/2011 | J.C. | Oxycodone | 30 mg | 120 |
| 11 | 12/10/2010 | 12/10/2010 | J.C. | Opana ER | 40 mg | 60 |
| 12 | 12/10/2010 | 12/10/2010 | J.C. | Oxycodone | 30 mg | 120 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 13-24

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADOLPH HARPER, JR., the defendant, did knowingly and intentionally distribute and dispense

oxycodone, a Schedule II controlled substance, by issuing "prescriptions" outside the usual

course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
| --- | --- | --- | --- | --- | --- | --- |
| 13 | 1/12/2012 | 1/12/2012 | K.C. | Oxycodone | 15 mg | 120 |
| 14 | 1/12/2012 | 1/12/2012 | K.C. | Oxycodone | 30 mg | 120 |
| 15 | 12/15/2011 | 12/15/2011 | K.C. | Oxycodone | 15 mg | 90 |
| 16 | 12/15/2011 | 12/15/2011 | K.C. | Oxycodone | 30 mg | 120 |
| 17 | 11/17/2011 | 11/17/2011 | K.C. | Oxycodone | 15 mg | 120 |
| 18 | 11/17/2011 | 11/17/2011 | K.C. | Oxycodone | 30 mg | 120 |
| 19 | 10/20/2011 | 10/20/2011 | K.C. | Oxycodone | 15 mg | 120 |
| 20 | 10/20/2011 | 10/20/2011 | K.C. | Oxycodone | 30 mg | 120 |
| 21 | 9/22/2011 | 9/22/2011 | K.C. | Oxycodone | 15 mg | 120 |
| 22 | 9/22/2011 | 9/22/2011 | K.C. | Oxycodone | 30 mg | 120 |
| 23 | 8/25/2011 | 8/25/2011 | K.C. | Oxycodone | 15 mg | 120 |
| 24 | 8/25/2011 | 8/25/2011 | K.C. | Oxycodone | 30 mg | 120 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 25-32

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADOLPH HARPER, JR., the defendant, did knowingly and intentionally distribute and dispense

oxycodone and methadone, Schedule II controlled substances, by issuing "prescriptions" outside

19

the usual course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|-------|-----------------|----------------|----------|-----------|----------------|-----|
| 25 | 7/5/2011 | 7/5/2011 | Y.Z. | Methadone | 10 mg | 180 |
| 26 | 7/5/2011 | 7/5/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| 27 | 4/26/2011 | 4/29/2011 | Y.Z. | Methadone | 10 mg | 180 |
| 28 | 4/26/2011 | 4/29/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| 29 | 4/1/2011 | 4/1/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| 30 | 3/4/2011 | 3/4/2011 | Y.Z. | Oxycodone | 15 mg | 90 |
| 31 | 1/12/2011 | 1/12/2011 | Y.Z. | Methadone | 10 mg | 120 |
| 32 | 1/12/2011 | 1/12/2011 | Y.Z. | Oxycodone | 15 mg | 90 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 33-38

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division, ADOLPH HARPER, JR., the defendant, did knowingly, and intentionally distribute and dispense oxycodone, a Schedule II controlled substance, by issuing "prescriptions," outside the usual course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|-------|-----------------|----------------|----------|-----------|----------------|-----|
| 33 | 4/1/2011 | 4/6/2011 | M.F. | Percocet | 325/10mg | 120 |
| 34 | 3/4/2011 | 3/4/2011 | M.F. | Percocet | 325/10mg | 120 |
| 35 | 2/2/2011 | 2/3/2011 | M.F. | Percocet | 325/10mg | 120 |
| 36 | 1/5/2011 | 1/5/2011 | M.F. | Oxycontin | 40 mg | 60 |
| 37 | 11/4/2010 | 11/4/2010 | M.F. | Percocet | 325/10mg | 120 |

All in violation of Title 21, Section 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 38-47

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division, ADOLPH HARPER, JR., the defendant, did knowingly and intentionally distribute and dispense

oxycodone and oxymorphone, Schedule II controlled substances, by issuing "prescriptions,"

outside the usual course of professional practice and not for a legitimate medical purpose, as

indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|-------|-----------------|----------------|----------|-----------|----------------|-----|
| 38 | 10/28/2011 | 10/29/2011 | T.L. | Percocet | 325/10 mg | 120 |
| 39 | 10/28/2011 | 10/28/2011 | T.L. | Opana ER | 40 mg | 90 |
| 40 | 9/30/2011 | 9/30/2011 | T.L. | Percocet | 325/10 mg | 120 |
| 41 | 9/30/2011 | 9/30/2011 | T.L. | Opana ER | 40 mg | 90 |
| 42 | 9/2/2011 | 9/2/2011 | T.L. | Percocet | 325/10 mg | 120 |
| 43 | 9/2/2011 | 9/2/2011 | T.L. | Opana ER | 40 mg | 90 |
| 44 | 8/5/2011 | 8/6/2011 | T.L. | Opana ER | 40 mg | 90 |
| 45 | 8/5/2011 | 8/5/2011 | T.L. | Percocet | 325/10 mg | 120 |
| 46 | 7/8/2011 | 7/11/2011 | T.L. | Percocet | 325/10mg | 120 |
| 47 | 7/8/2011 | 7/8/2011 | T.L. | Opana ER | 40 mg | 90 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 48-57

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADOLPH HARPER, JR., the defendant, did knowingly, and intentionally distribute and dispense

oxycodone, a Schedule II controlled substance, by issuing "prescriptions" outside the usual

course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|-------|-----------------|----------------|----------|-----------|----------------|-----|
| 48 | 2/3/2012 | 2/3/2012 | R.W. | Oxycodone | 15 mg | 120 |
| 49 | 2/3/2012 | 2/3/2012 | R.W. | Oxycodone | 30 mg | 90 |
| 50 | 1/3/2012 | 1/3/2012 | R.W. | Oxycodone | 30 mg | 90 |
| 51 | 1/3/2012 | 1/3/2012 | R.W. | Oxycodone | 15 mg | 120 |
| 52 | 12/5/2011 | 12/5/2011 | R.W. | Oxycodone | 30 mg | 90 |
| 53 | 11/4/2011 | 11/5/2011 | R.W. | Oxycodone | 15 mg | 120 |
| 54 | 10/6/2011 | 10/6/2011 | R.W. | Oxycodone | 30 mg | 90 |
| 55 | 10/6/2011 | 10/6/2011 | R.W. | Oxycodone | 15 mg | 120 |
| 56 | 9/8/2011 | 9/8/2011 | R.W. | Oxycodone | 30 mg | 90 |
| 57 | 9/8/2011 | 9/8/2011 | R.W. | Percocet | 325/10mg | 120 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 58-69

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADOLPH HARPER, JR., the defendant, did knowingly and intentionally distribute and dispense

oxycodone, a Schedule II controlled substance, by issuing "prescriptions" outside the usual

course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| 58 | 8/3/2011 | 8/3/2011 | P.L. | Percocet | 325/10mg | 120 |
| 59 | 8/3/2011 | 8/3/2011 | P.L. | Oxycodone | 30 mg | 120 |
| 60 | 7/6/2011 | 7/7/2011 | P.L. | Oxycodone | 30 mg | 120 |
| 61 | 7/6/2011 | 7/7/2011 | P.L. | Percocet | 325/10 mg | 120 |
| 62 | 6/8/2011 | 6/8/2011 | P.L. | Percocet | 325/10 mg | 120 |
| 63 | 6/8/2011 | 6/8/2011 | P.L. | Oxycodone | 30 mg | 120 |
| 64 | 5/11/2011 | 5/11/2011 | P.L. | Percocet | 325/10 mg | 120 |
| 65 | 5/11/2011 | 5/11/2011 | P.L. | Oxycodone | 30 mg | 120 |
| 66 | 4/13/2011 | 4/13/2011 | P.L. | Percocet | 325/10 mg | 120 |
| 67 | 4/13/2011 | 4/13/2011 | P.L. | Oxycodone | 30 mg | 120 |
| 68 | 3/16/2011 | 3/16/2011 | P.L. | Percocet | 325/10 mg | 120 |
| 69 | 3/16/2011 | 3/16/2011 | P.L. | Oxycodone | 30 mg | 120 |

All in violation of Title 21, Section 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 70-75

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADOLPH HARPER, JR., the defendant, did knowingly and intentionally distribute and dispense

oxymorphone, a Schedule II controlled substance, by issuing "prescriptions" outside the usual

course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|

| 70 | 6/23/2011 | 6/23/2011 | Je.C. | Opana ER | 40 mg | 90 |
| 71 | 5/4/2011 | 5/4/2011 | Je.C. | Opana ER | 20 mg | 120 |
| 72 | 5/3/2011 | 5/3/2011 | Je.C. | Opana ER | 40 mg | 60 |
| 73 | 4/5/2011 | 4/5/2011 | Je.C. | Opana ER | 40 mg | 120 |
| 74 | 3/8/2011 | 3/8/2011 | Je.C. | Opana ER | 40 mg | 120 |
| 75 | 2/7/2011 | 2/7/2011 | Je.C. | Opana ER | 40 mg | 120 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), United States Code.

## COUNTS 76-83

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADOLPH HARPER, JR., the defendant, did knowingly and intentionally distribute and dispense

oxycodone and oxymorphone, Schedule II controlled substances, by issuing "prescriptions"

outside the usual course of professional practice and not for a legitimate medical purpose, as

indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| 76 | 10/25/2011 | 10/25/2011 | J.O. | Oxycodone | 10 mg | 60 |
| 77 | 10/25/2011 | 10/25/2011 | J.O. | Opana ER | 40 mg | 60 |
| 78 | 9/22/2011 | 9/22/2011 | J.O. | Opana ER | 40 mg | 60 |
| 79 | 9/22/2011 | 9/22/2011 | J.O. | Oxy IR | 5 mg | 60 |
| 80 | 8/25/2011 | 8/25/2011 | J.O. | Opana ER | 40 mg | 60 |
| 81 | 7/28/2011 | 7/28/2011 | J.O. | Opana ER | 40 mg | 60 |
| 82 | 6/30/2011 | 6/30/2011 | J.O. | Opana ER | 40 mg | 60 |
| 83 | 6/2/2011 | 6/2/2011 | J.O. | Opana ER | 20 mg | 60 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C) United States Code.

## COUNTS 84-109

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division,

ADRIA HARPER, the defendant, did knowingly and intentionally distribute oxycodone, a

Schedule II narcotic controlled substance, by issuing "prescriptions," outside the usual course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Name | Substance | Strength mg/mg | Qty |
|-------|----------------|----------------|------|-----------|----------------|-----|
| 84 | 12/17/2010 | 12/17/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 85 | 12/16/2010 | 12/16/2010 | Adria Harper | Percocet | 10/325 mg | 150 |
| 86 | 11/18/2010 | 11/18/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 87 | 11/12/2010 | 11/12/2010 | M.D. | Opana ER | 30 mg | 60 |
| 88 | 11/12/2010 | 11/12/2010 | C.L. | Oxy IR | 5 mg | 120 |
| 89 | 11/4/2010 | 11/4/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 90 | 10/21/2010 | 10/21/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 91 | 9/28/2010 | 9/28/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 92 | 9/23/2010 | 9/23/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 93 | 8/31/2010 | 8/31/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 94 | 8/26/2010 | 8/26/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 95 | 8/3/2010 | 8/3/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 96 | 7/29/2010 | 7/29/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 97 | 7/6/2010 | 7/6/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 98 | 7/1/2010 | 7/1/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 99 | 6/7/2010 | 6/7/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 100 | 6/3/2010 | 6/3/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 101 | 5/6/2010 | 5/6/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 102 | 4/12/2010 | 4/13/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 103 | 4/8/2010 | 4/8/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 104 | 3/25/2010 | 3/25/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 105 | 3/11/2010 | 3/11/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 106 | 2/10/2010 | 2/11/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 107 | 2/2/2010 | 2/2/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 108 | 1/4/2010 | 1/4/2010 | Adria Harper | Percocet | 10/325 mg | 120 |
| 109 | 12/7/2009 | 12/7/2009 | Adria Harper | Percocet | 10/325 mg | 120 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C) and Title 18, Section 2, United States Code.

## COUNTS 110-123

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division, PATRICIA LAUGHMAN, the defendant, did knowingly and intentionally distribute oxycodone,

a Schedule II narcotic controlled substance, by issuing "prescriptions," outside the usual course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Name | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| 110 | 9/27/2010 | 9/27/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 111 | 8/19/2010 | 8/19/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 112 | 7/30/2010 | 7/31/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 113 | [BLANK] | 7/15/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 114 | 6/28/2010 | 6/28/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 115 | 6/14/2010 | 6/15/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 116 | 6/7/2010 | 6/9/2010 | Patricia Laughman | Oxycodone | 15 mg | 120 |
| 117 | 5/13/2010 | 5/14/2010 | Patricia Laughman | Roxicet | 15 mg | 120 |
| 118 | 4/20/2010 | 4/22/2010 | Patricia Laughman | Roxicet | 15 mg | 120 |
| 119 | 4/9/2010 | 4/10/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 120 | 3/22/2010 | 3/22/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 121 | 2/26/2010 | 2/26/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 122 | 2/4/2010 | 2/4/2010 | Patricia Laughman | Percocet | 10/325 mg | 120 |
| 123 | 1/25/2010 | 1/25/2010 | Patricia Laughman | Percocet | 10/325 mg | 60 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), and Title 18, Section 2, United States Code.

## COUNTS 124-130

The Grand Jury further charges:

On or about the following dates in the Northern District of Ohio, Eastern Division, TEQUILLA BERRY, the defendant, did knowingly and intentionally distribute oxycodone, a Schedule II narcotic controlled substance, by issuing "prescriptions," outside the usual course of professional practice and not for a legitimate medical purpose, as indicated below:

| COUNT | Date Rx Written | Date Rx Filled | Customer | Substance | Strength mg/mg | Qty |
|---|---|---|---|---|---|---|
| 124 | 2/1/2011 | 2/3/2011 | E.P. | Oxycodone | 30 mg | 120 |
| 125 | 11/5/2010 | 11/5/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 126 | 10/22/2010 | 10/26/2010 | E.P. | Oxycodone | 30 mg | 120 |
| 127 | 10/1/2010 | 10/4/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 128 | 7/30/2010 | 7/31/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 129 | 7/2/2010 | 7/2/2010 | E.P. | Percocet | 325/10 mg | 120 |
| 130 | 5/28/2010 | 6/1/2010 | E.P. | Percocet | 325/10 mg | 120 |

All in violation of Title 21, Sections 841(a)(1) and (b)(1)(C), and Title 18, Section 2, United States Code.

## COUNT 131

The Grand Jury further charges:

### General Allegations

At all times material and relevant to this count:

### The Defendant

36.     Defendant ADOLPH HARPER, JR. was a medical doctor licensed to practice medicine in the State of Ohio.  He maintained a medical practice in Akron, Ohio.  He had a Drug Enforcement Administration practitioner's registration for controlled substances Schedules II – V.  He was a participating provider in the Medicare, Medicaid, Medicaid HMOs, United Healthcare, and Anthem Blue Cross and Blue Shield health care benefits programs.

### Medicaid

37.     Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., established the Grants to States for Medical Assistance Programs, popularly known as the Medicaid Program, or simply, "Medicaid" which was designed to provide medical services, equipment, and supplies to certain individuals and families with low income.  Medicaid was a federal and state funded health insurance program administered by the various states.  Medicaid was a health care benefit program as defined in Title 18, United States Code, Section 24(b).  The United States Department of Health and Human Services ("HHS") funded approximately 64 percent of Ohio's Medicaid program.  The State of Ohio administered its Medicaid Program, (sometimes referred to as the "medical assistance program" or the "Ohio Medicaid Program") through the Ohio Department of Medicaid ("ODM").  A "Medicaid managed care organization" meant a managed

care organization that had entered into a contract with ODM. ODM coordinated the medical

assistance program with group health plans such as Buckeye Community Health Care

("Buckeye"), Caresource, and Unison Health Plan of Ohio ("Unison").

38.     Medicaid regulations and Medicaid Managed Care Plan provider agreements

stated that "payment" constitutes payment in full for any covered services and a covered provider

agreed not to charge the member or ODM (Medicaid) any co-payment, cost sharing, down

payment, or similar charge, refundable or otherwise. These regulations were set forth in Ohio

Administrative Code Section 5101:3-1-60, 5101:3-1-09 and 5101:3-26-12.

Medicare

39.     The Medicare Program ("Medicare") was a federal health care benefit program

providing benefits to individuals who were over the age of 65 or to certain disabled persons

("Medicare beneficiaries"). The Centers for Medicare and Medicaid Services ("CMS") was the

agency of the United States Department of Health and Human Services ("HHS") that

administered the Medicare program. The Medicare program was enacted by Congress in 1965,

under Title XVIII of the Social Security Act. Medicare provided medical insurance benefits to

persons age 65 or older and to certain disabled persons. Medicare was a health care benefit

program as defined in 18 U.S.C. § 24(b). Medicare had four parts: hospital insurance (Part A),

medical insurance (Part B), managed care organizations (Part C), and prescription drugs (Part D).

Medicare Part B paid the cost of physician services. The Medicare Prescription Drug Program,

Part D, was administered by the commercial health insurance plans chosen by the Medicare

beneficiary, and these health insurance plans were private entities that made payments to the

pharmacies for the prescriptions.

40.     CMS notified Medicare providers of billing criteria and coverage of services through Medicare Policy Manuals, Carrier Supplier Manuals, Local Coverage Determinations, and newsletters published on the Internet and through sections of the Social Security Act.

41.     In the Medicare program, participating providers agreed to bill only for services the provider actually rendered, that were medically necessary to diagnose and treat illness or injury and met the requisite criteria, and for which the provider maintained adequate supporting documentation. Providers agreed with Medicare that lack of adequate documentation could constitute fraud subject to criminal sanctions. A service was defined as "medically necessary," in part, when it provided "[f]or the treatment of an injury, sickness, or other health condition and is 1) appropriate and consistent with the diagnosis or symptoms, and consistent with accepted medical standards; 2) not chiefly custodial in nature; 3) not investigational, experimental or unproven; 4) not excessive in scope, duration, or intensity to provide safe, adequate, and appropriate treatment."

### Private Insurance Providers

42.     United Healthcare and Anthem Blue Cross Blue Shield were privately held companies that provided medical insurance benefits. United Healthcare and Anthem Blue Cross Blue Shield were health care benefit programs as defined in Title 18, Section 24(b), United States Code.

### Billing

43.     Medical providers and health care benefit programs used well-known and standard insurance processing codes to identify certain medical diagnoses and medical treatments and procedures. The American Medical Association assigned and published five digit codes, known as the Current Procedural Terminology (CPT) and Healthcare Common Procedure

Coding System (HCPCS) codes.  Medical providers recorded diagnoses and medical procedures on a standard claim form known in the industry as the CMS 1500 form, which was then sent to the patient's health care benefit program.  CPT codes needed to be designated on the CMS 1500 claim form by the health care provider and then submitted either by mail or electronically to the health care benefit program for payment.

44.     Specific CPT codes were assigned for evaluation and management ("E/M") services provided to established patients in a physician's office (some of the E/M services were known as "office visits").  Among these E/M services were office visits billed under CPT codes "99211," "99212," "99213," "99214," and "99215."  Insurance companies reimbursed health care providers at increasing rates based upon the level of complexity indicated by the office visit codes.  For example, CPT code 99214 was used for office visits for evaluation and management of an established patient which required the physician to perform at least two of the following three components: a detailed history; a detailed examination, and moderately complex medical decision-making.  CPT 99214 was defined as the patient usually presenting problems of moderate to high severity and typically the physician spends 25 minutes face-to-face with the patient.  The procedures and services represented by CPT codes were health care benefits, items, and services, within the meaning of Title 18, Section 24(b), United States Code.

ADOLPH HARPER, JR.

45.     ADOLPH HARPER, JR. operated a "medical" practice in the Akron, Ohio area. In September 2009, ADOLPH HARPER, JR. began offering "pain management" services from his "medical office."  ADOLPH HARPER, JR. was also registered as a Suboxone provider in the State of Ohio.

29

46.    ADOLPH HARPER, JR. controlled the day-to-day operations of his "medical office."

47.    ADOLPH HARPER, JR. established a cash-payment policy for certain services.

### Purpose of the Scheme and Artifice

48.    It was the purpose of the scheme and artifice for ADOLPH HARPER, JR., to enrich himself by submitting insurance claims using billing codes that reflected a service that was more costly than what ADOLPH HARPER, JR. actually performed.

### The Scheme and Artifice

49.    As part of his medical practice, ADOLPH HARPER, JR., submitted billings to Medicaid, Medicaid HMOs, Medicare, and various private insurance companies for procedures performed.  ADOLPH HARPER, JR. selected the billing code for each customer.  ADOLPH HARPER, JR.'s staff then submitted that billing code to insurance plans on ADOLPH HARPER, JR.'s behalf.

50.    ADOLPH HARPER, JR., often used the same billing code for his customers regardless of the service ADOLPH HARPER, JR. performed during the customer's appointment. ADOLPH HARPER, JR. used codes that reflected a service that was more costly than that which was actually performed.  ADOLPH HARPER, JR. then received payment from the customers' insurance companies based on the submission of claims with these billing codes.  ADOLPH HARPER, JR. routinely billed insurance providers for an office visit with Current Procedural Terminology (CPT) code 99214 and rarely billed the lower evaluation codes of 99211-99213.

51.    ADOLPH HARPER, JR. had members of his office staff complete customers' visit notes in their patient charts before the customers arrived at the office for their appointments.

ADOLPH HARPER, JR. wrote generic patient assessment notes in the customers' patient files that did not support the high billing codes he submitted to insurance providers.

### The Offense

52.     From on or about September 1 2009, continuing through on or about May 31, 2012, in the Northern District of Ohio, Eastern Division, and elsewhere the defendant, ADOLPH HARPER, JR., and others known and unknown to the Grand Jury, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare, Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United Healthcare, and Anthem Blue Cross Blue Shield, and to obtain by means of false and fraudulent pretenses, representations described herein, and promises, money and property owned by, and under the custody and control of Medicare, Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United Healthcare, and Anthem Blue Cross Blue Shield, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 132

The Grand Jury further charges:

The general allegations set forth in Count 131 are hereby incorporated by reference.

### Purpose of the Scheme and Artifice

53.     It was the purpose of the scheme and artifice for ADOLPH HARPER, JR., to enrich himself by submitting insurance claims for services that were not performed.

### The Scheme and Artifice

54.     As part of his medical practice, ADOLPH HARPER, JR. submitted billings to Medicaid, Medicaid HMOs, Medicare, and various private insurance companies for procedures performed. ADOLPH HARPER, JR. selected the billing code for each customer. ADOLPH HARPER, JR. and his staff then submitted that billing code to insurance plans.

55.     ADOLPH HARPER, JR. submitted billings to insurance companies for services that were not performed. ADOLPH HARPER, JR. then received payment from the insurance companies based on these claims for unperformed services

56.     ADOLPH HARPER, JR. was not in his "medical office" on November 11, 2010, November 12, 2010, and December 28, 2010.   On these dates, ADOLPH HARPER, JR. submitted eight patient claims of CPT code 99214 to Medicare.  These eight Medicare claims were billed at $752 and paid at $601.  For these dates, ADOLPH HARPER, JR. billed CPT code 99214 for 75 Medicaid and Medicaid HMO patients. ADOLPH HARPER, JR. billed $6,668 for three days of alleged service, and Medicaid and Medicaid HMOs paid him $3,813.  Insurance billings reflect "prescriptions," including numerous Schedule II narcotics, written in ADOLPH HARPER, JR.'s name issued on these dates when ADOLPH HARPER, JR. was not in the office.

### The Offense

57.     From on or about September 1 2009, continuing through on or about May 31, 2012, in the Northern District of Ohio, Eastern Division, and elsewhere the defendant, ADOLPH HARPER, JR., and others known and unknown to the Grand Jury, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare, Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United Healthcare, and Anthem Blue

Cross Blue Shield, and to obtain by means of false and fraudulent pretenses, representations described herein, and promises, money and property owned by, and under the custody and control of Medicare, Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United Healthcare, and Anthem Blue Cross Blue Shield, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Sections 1347 and 2.

**COUNT 133**

The Grand Jury further charges:

The general allegations set forth in Count 131 are hereby incorporated by reference.

**Purpose of the Scheme and Artifice**

58.     It was the purpose of the scheme and artifice for ADOLPH HARPER, JR., to enrich himself by collecting cash payment from his customers for a service and submitting insurance claims for the same service.

**The Scheme and Artifice**

59.     As part of his medical practice, ADOLPH HARPER, JR. submitted billings to Medicaid, Medicaid HMOs, Medicare, and various private insurance companies for procedures performed. ADOLPH HARPER, JR. selected the billing code for each customer. ADOLPH HARPER, JR. and his staff then submitted that billing code to insurance plans.

60.     ADOLPH HARPER, JR. collected cash payments from customers and billed insurance carriers for the same service. ADOLPH HARPER, JR. improperly charged customers cash for services, in particular Suboxone treatments, which was a covered service through Medicaid and Medicaid HMOs. ADOLPH HARPER, JR. collected twice as much by charging

and accepting cash for services that should have been covered by a customer's insurance providers.

## The Offense

61.     From on or about September 1 2009, continuing through on or about May 31, 2012, in the Northern District of Ohio, Eastern Division, and elsewhere the defendant, ADOLPH HARPER, JR., and others known and unknown to the Grand Jury, knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare, Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United Healthcare, and Anthem Blue Cross Blue Shield, and to obtain by means of false and fraudulent pretenses, representations described herein, and promises, money and property owned by, and under the custody and control of Medicare, Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United Healthcare, and Anthem Blue Cross Blue Shield, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 134

The Grand Jury further charges:

The general allegations set forth in Count 131 are hereby incorporated by reference.

### Purpose of the Scheme and Artifice

62.     It was the purpose of the scheme and artifice for ADOLPH HARPER, JR. to enrich himself by causing the submission of insurance claims for illegitimate "prescriptions" that he issued outside the usual course of professional conduct and not for any legitimate medical purpose.

34

## The Scheme and Artifice

63.     ADOLPH HARPER, JR., prescribed controlled substances to his customers,

frequently in potentially dangerous combinations, that fell outside the usual course of

professional practice and were not for any legitimate medical purpose.  ADOLPH HARPER, JR.

knew when he distributed these "prescriptions" that many of his customers had medical

insurance.  The customer needed to take the "prescription" to a pharmacy to have it filled, and

the pharmacy would submit a claim to the customer's insurance provider for the cost of the

"prescription."  By distributing these illegitimate "prescriptions" to customers with health care

insurance anticipating that the pharmacies would submit claims to the insurance providers,

ADOLPH HARPER, JR. caused the submission of billings to Medicare, Medicaid, Medicaid

HMOs, and other insurance providers, including United Healthcare and Anthem Blue Cross Blue

Shield, for the cost of these illegitimate "prescriptions."

## The Offense

64.     From on or about September 1 2009, continuing through on or about May 31,

2012, in the Northern District of Ohio, Eastern Division, and elsewhere the defendant, ADOLPH

HARPER, JR., and others known and unknown to the Grand Jury, knowingly and willfully

executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs

affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare,

Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United Healthcare, and Anthem Blue

Cross Blue Shield, and to obtain by means of false and fraudulent pretenses, representations

described herein, and promises, money and property owned by, and under the custody and

control of Medicare, Medicaid, Medicaid HMOs, Caresource, Unison, Buckeye, United

Healthcare, and Anthem Blue Cross Blue Shield, in connection with the delivery of and payment

for health care benefits, items, and services, in violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE

The Grand Jury further charges:

For the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853, the allegations of Counts 1 through 134 are incorporated herein by reference. As a result of the foregoing offenses, defendants ADOLPH HARPER, JR., ADRIA HARPER, PATRICIA LAUGHMAN, and TEQUILLA BERRY, shall forfeit to the United States any and all property constituting, or derived from, any proceeds they obtained, directly or indirectly, as the result of such violations; and any and all of their property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.